UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
C.W.; D.S.; M.C.; A.H.; S.G.; J.E.; S.A.; F.E.; I.F.; :
I.B.; and D.G., by his next friend THEO
LIEBMANN; and other similarly situated youth, :

                         Plaintiffs, :

    -against- :

THE CITY OF NEW YORK, :

                       Defendant. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       13 Civ. 7376 (PK)

       STIPULATION AND ORDER
       OF SETTLEMENT

**WHEREAS**, Plaintiffs commenced the instant lawsuit on December 30, 2013,

alleging that Defendant has violated federal, state, and city law by failing to provide youth

shelter and services adequate to meet the needs of homeless youth ages 16 to 20, ejecting

homeless youth from shelter without due process and/or after an arbitrary time period, and

failing to provide reasonable accommodations to enable homeless youth with disabilities to

access youth shelter and services;

**WHEREAS**, on August 5, 2014, the Court so-ordered the parties' Stipulation and

Order for Class Certification, certifying the following:

> Class:  Homeless youth ages 16-20 located within the boundaries
> of New York City who have sought or will seek youth shelter
> and/or services from the City but have been or will be denied such
> shelter and/or services.

> Subclass 1:  Homeless youth ages 16-17 located within the
> boundaries of New York City who have sought or will seek youth
> shelter and/or services from the City but have been or will be
> denied such shelter and/or services.

> Sub-subclass 1:  Homeless youth ages 16-17 located within the
> boundaries of New York City who (i) have a disability under Title
> II of the Americans with Disabilities Act, 42 U.S.C. 12102, (ii)
> have sought or will seek youth shelter and/or services from the

City but have been or will be denied such shelter and/or services, (iii) (a) have been subjected to discrimination by the City by reason of their disabilities, and/or (b) have requested but have not received any reasonable accommodations of their disabilities where the existence of such disabilities was known or should have been known by the City.

Subclass 2:  Homeless youth ages 18-20 located within the boundaries of New York City who have sought or will seek youth shelter and/or services from the City but have been denied or will be denied such shelter and/or services.

Sub-subclass 2:  Homeless youth ages 18-20 located within the boundaries of New York City who (i) have a disability under Title II of the Americans with Disabilities Act, 42 U.S.C. 12102, (ii) have sought or will seek youth shelter and/or services from the City but have been or will be denied such shelter and/or services, (iii) (a) have been subjected to discrimination by the City by reason of their disabilities, and/or (b) have requested but have not yet received any reasonable accommodations of their disabilities where the existence of such disabilities was known or should have been known by the City;

**WHEREAS**, Defendant denies each and every allegation contained in the Amended Class Action Complaint;

**WHEREAS**, by Memorandum and Order dated March 30, 2018, the Court dismissed Plaintiffs' claims under the Runaway and Homeless Youth Act, N.Y. Exec. Law § 532 et seq., for class members age 18 and older;

**WHEREAS**, no finding of liability has been made;

**WHEREAS**, the parties desire to settle this action on terms and conditions just and fair to all parties;

**WHEREAS**, the parties have conducted extensive, arm's length negotiations to resolve the issues in this action and have resolved those issues as specified in this Stipulation and Order of Settlement ("Stipulation");

2

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by
and between the undersigned, as follows:

<u>**DEFINITIONS**</u>

1.  <u>ACS</u>:  The New York City Administration for Children's Services.

2.  <u>Class Member</u>:  Any individual who is a member of the class as defined above.

3.  <u>Crisis Service Program</u>: Any Provider that serves as a runaway and homeless
    youth crisis services program, as that term is defined in the Runaway and
    Homeless Youth Act, N.Y. Exec. Law § 532 *et seq.*

4.  <u>DHS</u>:  The New York City Department of Homeless Services.

5.  <u>DOE</u>:  The New York City Department of Education.

6.  <u>Drop-In Program</u>:  Non-residential sites for youth to access support services as
    that term is defined in the Runaway and Homeless Youth Act, N.Y. Exec. Law §
    532 *et seq*.

7.  <u>DYCD</u>:  The New York City Department of Youth and Community Development.

8.  <u>DYCD RHY Services</u>:  DYCD-funded services provided to runaway and/or
    homeless youth by contracted providers, including residential services, Drop-In
    Program services, and street outreach services.

9.  <u>DYCD RHY Residential Services</u>:  All residential programs contracted by DYCD
    that provide crisis services and/or transitional independent living support services
    to runaway and/or homeless youth.  For purposes of this Stipulation, the term
    "DYCD RHY Residential Services" shall have the same meaning and apply
    equally to the extent that a Provider or any other City agency assumes
    responsibilities or operational control of an RHY program currently contracted by

3

DYCD.  DYCD RHY Residential Services does not include drop-in programs or outreach services.

10.  <u>Effective Date</u>:  The date on which the following shall have occurred: (a) this Stipulation is entered as an order of the Court; and (b) the Court enters an Order and Final Judgment in this action following any notice to the Class, the Fairness Hearing, and, if necessary, compliance with the notice provision of the Class Action Fairness Act, 28 U.S.C. § 1715.  Plaintiffs' rights to enforce the terms of the Judgment shall commence upon the Effective Date, except where it is provided in this Stipulation that certain actions will be taken after the Effective Date, and in those instances, Plaintiffs' rights to enforce shall commence at that point.

11.  <u>Executive Expense Budget</u>:  Defendant's Executive Budget for the fiscal year, as prepared by the Mayor's Office of Management and Budget.

12.  <u>Mayor's Management Report</u>:  The bi-annual report of the Mayor's Office of Operations.

13.  <u>Plaintiffs' Counsel</u>:  When used in reference to an ongoing or future obligation of Defendant or right of Plaintiffs, The Legal Aid Society and Patterson Belknap Webb & Tyler LLP.

14.  <u>Provider</u>:  Any entity that, through contractual, licensing, or other arrangements with DYCD, provides DYCD RHY Services (including outreach to runaway and/or homeless youth).  For purposes of this Stipulation, The Legal Aid Society is not a "Provider."

4

15.     <u>Runaway and/or Homeless Youth</u>:  As defined under the New York State
Runaway and Homeless Youth Act, N.Y. Exec. Law § 532 *et seq.*

16.     <u>Settlement Period</u>:  The period of time from the Effective Date until the
termination of the Court's jurisdiction over this action on December 31, 2023.

17.     <u>Shelter Access Report</u>:  The report submitted each January and July to the New
York City Council, pursuant to New York City Local Law 79 of 2018.

18.     <u>TIL</u>:  Any Provider that serves as a transitional independent living support
program and/or provides transitional independent living support services, as that
term is defined in the Runaway and Homeless Youth Act, N.Y. Exec. Law § 532
*et seq*.

## PRELIMINARY APPROVAL AND CLASS NOTICE

19.     The parties shall take all necessary steps to obtain Court approval of this Order
and subsequent entry of Final Judgment.

20.     Defendant shall solely be responsible for all costs associated with providing any
Court-ordered notice to Class Members.

## DEFENDANT'S OBLIGATIONS

**General Limitation**

21.     The provisions of this Stipulation, and Defendant's obligations pursuant to this
stipulation, shall extend only to runaway and homeless youths ages 16 to 20 years
old.  Further, information contemplated in this Stipulation, such as utilization
rates and access to services, shall be based on services provided to runaway and
homeless youths ages 16 to 20 years old only.

5

**Provision of Services and Funding Commitment**

22.     Defendant and all Providers shall assist runaway and homeless youth in obtaining
access to drop-in centers and residential services, including but not limited to
supportive housing, rental assistance programs, and public housing programs.

23.     Within 30 days of the Effective Date of this Stipulation, Defendant shall have
adopted and promulgated the agreed-upon policy, substantially in the form of
Exhibit A, regarding the procedures for discipline and involuntary discharge from
DYCD RHY Residential Services.  This policy may be amended during the
settlement period by agreement of the parties.

24.     Subject to the provisions of paragraph 25, Defendant agrees to include in the
Executive Expense Budget for each fiscal year during the term of the Settlement
Period an amount no less than Defendant reasonably deems necessary to maintain
the level of programs and services supported by Defendant's fiscal year 2019
expense budget for runaway and homeless youth services, including the provision
of crisis services program beds and TIL support program beds for youth ages 16
to 20 and the provision of drop-in center services.

25.     If, during the Settlement Period, the utilization rates for runaway and homeless
youth crisis services program beds and runaway and homeless youth TIL beds are
75 percent or lower for a period of one fiscal year, as indicated in the Mayor's
Management Report, Defendant may reduce the expense budget for runaway and
homeless youth services to a level no less than sufficient to fund the actually
utilized runaway and homeless youth crisis services beds and TIL beds.

26.    Before reducing funding pursuant to paragraph 25, Defendant, through DYCD, will meet with Plaintiffs' counsel, provide documentation reflecting the utilization rate, and explain to Plaintiffs' counsel why Defendant believes that the conditions described in paragraph 25 are satisfied and that funding should be reduced.

27.    During each year of the Settlement Period, Defendant shall publicize runaway and homeless youth shelter and service availability through publicly available physical and/or digital notices reasonably calculated to reach the runaway and homeless youth population.  Defendant shall ensure that this messaging is available to relevant agencies and programs, including DOE, ACS, and DHS. Plaintiffs' counsel shall have the option, in January and June of each year through and including 2023, to request a meeting with Defendant regarding signage and communications pertaining to access to DYCD RHY Services.  Such meetings, if requested, must take place at least once and may take place up to twice per year during the Settlement Period, at Plaintiffs' counsel's option.  Representatives from DYCD and Defendant's counsel will make themselves available for such meetings within 45 days of request and will give reasonable consideration to Plaintiffs' counsel's suggestions regarding proposed signage and communications.

**Procedure for Lack of Capacity**

28.    If, as indicated on any Shelter Access Report, beginning with the report issued in January 2020 and continuing through the report issued in July 2023, more than 50 youth under age 21 are unable to access DYCD RHY Residential Services due to capacity limitations in a six-month period (the "Initial Six-Month Period"),

7

DYCD and Defendant's counsel shall meet with Plaintiffs' counsel within fifteen business days of the issuance of such Shelter Access Report to discuss and consider solutions for addressing capacity issues.

29.     Within one month of this meeting, Defendant shall develop and provide Plaintiffs' counsel with a detailed, written plan that, if implemented, would address the capacity issue (the "Capacity Plan"). Upon request, DYCD and Defendant's counsel will meet with Plaintiffs' counsel at a reasonable time after delivery of the Capacity Plan to discuss its terms.

30.     If, in the six-month period immediately following any Initial Six-Month Period, more than 50 youth under age 21 are unable to access DYCD RHY Residential Services due to capacity limitations in a six-month period (the "Second Six-Month Period"), Defendant will take reasonable steps to implement the Capacity Plan developed following the Initial Six-Month Period, or an alternative Capacity Plan developed by DYCD in consultation with Plaintiffs' counsel, within one year of the close of the Second Six-Month Period. Such reasonable steps shall include Defendant taking all necessary steps to obtain budgetary approval of the Capacity Plan.

31.     At the time of the submission of the next Executive Budget (after the Second Six-Month Period), Defendant will provide Plaintiffs' counsel with a written report regarding its request for appropriation to implement the Capacity Plan pursuant to paragraph 30 above. In addition, Defendant will notify Plaintiffs' counsel in writing if the budget adopted by the New York City Council, or a subsequent budget modification, does not include sufficient funding to implement the

Capacity Plan.  Upon request, Defendant will meet with Plaintiffs' counsel at a reasonable time after delivery of any of these written reports to discuss the same.

32.    If Defendant is unable to implement the Capacity Plan within one year of the close of the Second Six-Month Period, it will take reasonable steps to implement the Capacity Plan to the extent reasonably possible.

33.    If Defendant is unable, for any reason, to implement the Capacity Plan in full within one year of the close of the Second Six-Month Period, Defendant will provide Plaintiffs' counsel with a written account of its efforts to implement the Capacity Plan.  Upon request, Defendant will meet with Plaintiffs' counsel at a reasonable time after delivery of such written account to discuss the same.

34.    If (i) Defendant is unable to implement any Capacity Plan within one year of the close of the Second Six-Month Period; and (ii) at any time after the close of the Second Six-Month Period, two additional six-month periods (consecutive or non-consecutive) elapse during which, based upon the Shelter Access Report(s), more than 100 youth under age 21 are unable to access DYCD RHY Residential Services due to capacity limitations, this Agreement shall not be construed to limit the ability of Plaintiffs or their agents, or of any Class Member bound by the Agreement, to pursue any remedy available at law or equity for injury arising from the lack of access to DYCD RHY Residential Services.

**Priority For 16- and 17-Year Olds**

35.    Defendant, through DYCD, shall require that all Providers of DYCD RHY Residential Services implement a written procedure and criteria to give priority to 16- and 17-year old runaway and homeless youth for DYCD RHY Residential

Services, over eligible youth age 18 or older, and ensure that 16- and 17-year old runaway and homeless youth are given said priority.

**Provision of Mental Health Services in DYCD RHY Residential Services**

36.     Providers of DYCD RHY Residential Services shall ensure that runaway and homeless youth are provided, either directly or through a referral from the Provider, with appropriate mental health services as needed by the individual youth.  An initial assessment of each youth shall be conducted upon admission to a residential program.  Referrals to mental health services shall be made within one week of admission and, where deemed necessary, mental health appointments shall be scheduled for within thirty days of admission.  If the youth does not attend the appointment, this shall not be considered violative of this provision of the Stipulation.

37.     Upon intake, each youth shall have the opportunity to meet with a case manager or counselor on a weekly basis to develop and then monitor the youth's Individualized Service Plan.

38.     Each Provider of DYCD RHY Residential Services shall employ at least one full-time onsite supervisor and one full-time counselor, at least one of whom must have a master's degree in social work or a related field.

39.     As provided by applicable New York State law, Providers shall not accept or retain any youth who is likely to cause danger to himself, herself, or others or to substantially interfere with the health, safety, welfare, or care of other residents; or who is in need of a level of medical or mental health care that cannot be reasonably provided through resources available to the Provider.  Arrangements

10

shall be made by each Provider of DYCD RHY Residential Services for the prompt transportation of youth with serious physical or mental health problems to an appropriate health care facility.

**Training with Respect to Runaway and Homeless Youth**

40.  Defendant shall hold training sessions to educate DHS staff about DYCD RHY Residential Services for runaway and homeless youth and how to refer runaway and homeless youth to those services.  Training sessions shall take place at least once or at Defendant's option twice per year during the Settlement Period.

41.  All DHS director-level intake staff, program administrators, and other staff who may reasonably be expected to have contact with runaway and/or homeless youth shall receive such training within one year of their date of hire.

**Reports and Collaborative Meetings**

42.  At least once during the Settlement Period, upon request of Plaintiffs' counsel, Defendant, through DYCD, shall meet with stakeholders to discuss recommendations for improving DYCD RHY Residential Services.  Plaintiffs and/or DYCD shall invite stakeholders, including currently runaway and/or homeless youth, formerly runaway and/or homeless youth, Providers, DYCD staff, advocates, and others, to these meetings.

43.  Plaintiffs' counsel will be offered the opportunity to attend meetings and participate in work groups related to the annual Youth Count during the Settlement Period.  Defendant, through DYCD, agrees to consider recommendations from Plaintiffs' counsel to improve the Youth Count's accuracy and comprehensiveness.

11

44.     During the Settlement Period, Defendant shall provide copies of or links to all reports prepared pursuant to New York City Local Law 79 of 2018, Local Law 81 of 2018, Local Law 86 of 2018, and Local Law 174 of 2018 to Plaintiffs' counsel, within a reasonable time after the publication and/or submission of such reports.

**Transitional Independent Living Facilities**

45.     All TILs shall, upon intake, review the compliance requirements of the program with each new resident and discuss the resident's needs, if any, for reasonable accommodations to maximize chances of success within the program.  In the event that a resident is found to require a reasonable accommodation, the TIL staff shall incorporate such accommodations into the resident's Individualized Service Plan, if one exists, or develop an Individualized Service Plan memorializing such accommodations.

## <u>JURISDICTION</u>

46.     The provisions of this Stipulation shall not take effect until the Effective Date, at which time it shall become effective.  Defendant's obligations under this Stipulation shall exist during the Settlement Period.

47.     The parties agree to submit all disagreements arising under or relating to this Stipulation to the Court, and hereby consent to the Court's exercise of jurisdiction over such all such disagreements.  Nothing in this Stipulation shall be construed to limit any party's ability to seek any remedy available at law or equity for a violation of this Stipulation.

**ENFORCEMENT**

48.     During the Settlement Period, if Plaintiffs' counsel believes that Defendant has

failed to comply with the provisions of this Stipulation, Plaintiffs' counsel shall

notify Defendant's counsel in writing of the nature and specifics of the alleged

failure to comply and shall specify the basis for such belief, including any reports

upon which such belief is based.  Such written notice shall be provided at least

thirty days before any motion is made for enforcement of this Stipulation or for

contempt, unless it is not possible to provide thirty days' notice due to exigent

circumstances (in which case, Plaintiffs will provide as much notice as is

practicable).  During the thirty-day period following notice, the parties' counsel

shall meet in an attempt to arrive at a resolution of the alleged failure to comply.

49.     If no resolution is reached within thirty days from the date of notice, Plaintiffs

may move the Court for an order enforcing the provisions of this Stipulation

and/or for contempt.  In the event that the parties agree to a plan to cure an alleged

violation and Plaintiffs believe the violation has still not been cured, Plaintiffs

must provide at least ten days' notice before any motion is made for enforcement

of this Stipulation or for contempt.

**RELEASE**

50.     Upon the Effective Date, the named Plaintiffs, Class Members, and their heirs,

administrators, representatives, successors, and assigns, and each of them, hereby

release and discharge the City of New York and its agencies (including, but not

limited to, the Department of Youth and Community Development, the New York

City Department of Social Services, the New York City Human Resources

13

Administration, the New York City Department of Homeless Services, the New York City Administration for Children's Services, and the New York City Department of Education), divisions, departments, officers, employees, agents, successors and assigns from any and all Settled Claims.  Settled Claims are any and all claims or rights of action that were or could have been asserted in this Action by the Named Plaintiffs, and/or all Class Members that arise out of, relate to, or are based upon the allegations, transactions, facts, matters or occurrences, representations, or omissions involved, set forth, or referred to in the Amended Class Action Complaint; except that the Settled Claims do not include the Reserved Claims.

51.     Reserved Claims are (a) claims to enforce this Stipulation; (b) claims by any Class Member pertaining to alleged adverse actions taken after the Effective Date with respect to the individual Class Member regarding the provision of DYCD RHY Services, except that Class Members must avail themselves of the procedures for discipline and involuntary discharge set forth in Exhibit A for any action that is subject to those procedures; and (c) any claims by any Class Member for money damages.  Nothing in this Stipulation relieves Plaintiffs of their obligations to exhaust all administrative remedies and challenge any reductions of their services or denials through any fair hearing process.

52.     Plaintiffs' counsel are not currently aware of, and are not planning to assert on behalf of any client, additional claims arising from the facts alleged in the Amended Complaint.  Plaintiffs' counsel agree not to solicit new clients for the purpose of asserting any such claims or advising on any such claims during the

14

Settlement Period.  Nothing in this paragraph shall be construed to restrict, in a manner in contravention of the law of any U.S. state, Plaintiffs' counsel's right to practice law.

## GENERAL PROVISIONS

53.  The Protective Order regarding confidential information, entered by the Court on May 20, 2014, shall remain in effect during the Settlement Period and thereafter.

54.  Nothing contained in this Stipulation and Order shall be deemed to be a finding or an admission that Defendant has in any manner violated Plaintiffs' rights as contained in the Constitution, Statutes, Ordinances, Rules, and/or Regulations of the United States, the State of New York, or the City of New York.

55.  If, for any reason, the Effective Date of this Stipulation does not occur, or if the Stipulation is in any way cancelled, terminated, or fails to become final in accordance with its terms, the parties shall be restored to their respective positions prior to the execution of this Stipulation and all releases delivered in connection with the Stipulation shall be null and void.  In such event, the terms and provisions of the Stipulation shall have no further force and effect with respect to the parties, including any Class Member, and shall not be used in the Action or in any other proceeding for any purpose.

56.  Nothing in this Stipulation shall be deemed to diminish or limit any rights of any individual receiving or seeking DYCD RHY Services may have under any existing law or court order or limit the ability of that individual to seek redress from any court or agency, except for the Released Claims as defined herein.

57.    This Stipulation shall not be admissible in, nor is it related to, any other

proceeding.  Nothing in this paragraph, however, shall bar Plaintiffs' counsel

from using information or documents obtained in connection with this Stipulation

in a manner that is consistent with the provisions of the Protective Order entered

on May 20, 2014 and is otherwise consistent with law.

58.    Notwithstanding the provisions of this Stipulation, Defendant reserves the right to

comply with any federal statute or regulation or state statute or regulation even

when doing so renders Defendant's compliance with any term of this Stipulation

impossible.  Defendant shall provide Plaintiffs with at least thirty days' notice

before taking any action inconsistent with this Stipulation on such basis, unless it

is not possible to provide 30 days' notice because, for example, of a sudden

change in the law (in which case, Defendants will provide as much notice as is

practicable).  Such notice shall detail the grounds for Defendant's belief that

compliance has been rendered impossible and the inconsistent action that

Defendant intends to take.  If Plaintiffs do not agree that Defendant's proposed

inconsistent action is warranted by the cited provision of law, such dispute shall

be submitted to the Court by motion pursuant to Federal Rule of Civil Procedure

60(b).

59.    This Stipulation is enforceable only by the Court and by the parties and is binding

upon the parties, by and through their officials, agents, employees, assigns, and

successors.

60.    Pursuant to this Stipulation, if the Court approves the Settlement, Plaintiffs

attorneys' may seek attorneys' fees.  The parties will try to agree on an amount,

16

but if no agreement is reached, Plaintiffs will make a motion and the Court will decide on an amount.

61.   This Stipulation contains all the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time or written agreement entered into prior to the execution of this Stipulation regarding the subject matter of the instant action shall be deemed to bind the parties hereto or to vary the terms and conditions contained herein.

62.   All written notifications sent pursuant to this Stipulation and all other correspondence concerning this Stipulation shall be sent by electronic mail to the following addresses, or to such other address as the recipient named below shall specify by notice in writing:

To Plaintiffs' counsel

> Theresa B. Moser
> Beth C. Hofmeister
> The Legal Aid Society
> 199 Water Street
> New York, NY 10038
> tbmoser@legal-aid.org
> bchofmeister@legal-aid.org

> Lisa E. Cleary
> Jane Metcalf
> Patterson Belknap Webb & Tyler LLP
> 1133 Avenue of the Americas
> New York, NY 10036
> lecleary@pbwt.com
> jmetcalf@pbwt.com

To Defendant's counsel

> Andrew Rauchberg
> New York City Law Department
> 100 Church Street
> New York, NY 10007

arauchbe@law.nyc.gov

63.     This Stipulation and Order of Settlement is final and binding upon the parties,

their successors, and their assigns.

Dated: New York, New York
       November 17, 2020

18

THE LEGAL AID SOCIETY
Janet E. Sabel, Attorney-in-Chief
Adriene L. Holder
Dawne A. Mitchell
Judith Goldiner
Lisa Freeman
Theresa B. Moser
Beth C. Hofmeister
Courtney Camp
of counsel
Attorney for Plaintiffs
199 Water Street
New York, New York 10038
Tel:  (212) 577-3300

JAMES E. JOHNSON
Corporation Counsel of the City of New York
Attorney for Defendant
100 Church Street
New York, New York 10007
Tel:  (212) 356-0891


By:     _____
            Andrew J. Rauchberg
            Assistant Corporation Counsel


By:     _____
            Beth C. Hofmeister


PATTERSON BELKNAP WEBB & TYLER
LLP
Attorney for Plaintiffs
1133 Avenue of the Americas
New York, New York 10036
Tel:  (212) 336-2000


By:     _____
            Jane Metcalf

IT IS HEREBY ORDERED that:

1.      This Stipulation is entered as an order of the Court and thereby takes effect

pursuant to paragraph 10.


*Peggy Kuo*

_____

HON. PEGGY KUO, U.S.M.J.


Dated:  November  _25_ , 2020

# Exhibit A

**DYCD Requirements for Amended Disciplinary Procedures, Including Involuntary Discharges, in Contracted Crisis Services and TIL Programs**

All DYCD-contracted providers funded to operate crisis services and transitional independent living programs are required to develop a Disciplinary and Involuntary Discharge procedure ("Procedure"). This Procedure must identify acts that warrant disciplinary action, and the specific disciplinary consequences of such acts. The Procedure must provide for graduated discipline corresponding to the seriousness of the infraction (see Attachment A for suggested categories of infractions and corresponding consequences). The Procedure must also outline specific steps to be taken in the event of an "Involuntary Discharge," which occurs when a youth is asked to leave a residential program against their will and on terms that they disagree with, or think are unfair. Involuntary discharges may be appropriate where a youth engages in conduct that can expose the youth, staff or other program participants to harm or risk of harm, or where a youth has demonstrated a refusal to comply with the rules and/or regulations of the program. The Procedure must include providing notice to the youth of both the grounds for the proposed discharge and the youth's right to request and obtain an appeal meeting with a neutral program supervisor in order to challenge the proposed discharge ("Program Appeal Meeting"). The Procedure must also include the youth's right to request and obtain an appeal meeting with DYCD to challenge the neutral program supervisor's decision to uphold the proposed discharge ("DYCD Appeal Meeting").

All RHY providers are required to submit their proposed Procedure to DYCD for review and approval. In addition, prior to making any changes to previously approved procedures, the provider must submit proposed changes to DYCD for review and approval.

Once approved, the Procedure should be included in the program's policies and procedures manual (or other operating manual) and communicated to youth when they begin residing in a residential program. Attached are templates for providers to utilize for each instance in which a youth is issued a disciplinary notice (Attachment B), or when it is determined that a youth is subject to involuntary discharge (Attachments C – F).

Provider agencies are required to inform DYCD of all Involuntary Discharges and maintain records concerning all Involuntary Discharges for review by DYCD. In addition, where the youth has requested a Program Appeal Meeting, the provider must send copies of the Involuntary Discharge Form (Attachment C) and relevant documents to DYCD prior to the Program Appeal Meeting. DYCD will have the option, but not the obligation, to attend the Program Appeal Meeting. These materials should be sent via email to the DYCD Contract Manager responsible for the particular site, and the RHY Director.

In the event that, following a Program Appeal Meeting, the provider agency determines to uphold the involuntary discharge, the youth shall be informed of the determination (Attachment D) and given the opportunity to formally and in writing request a conference with DYCD ("DYCD Appeal Meeting"). The youth has the option to have a support person (friend, social worker, relative, attorney, advocate, or other individual) present at the DYCD Appeal Meeting. The youth must identify the support person and arrange for his/her participation. DYCD will not provide a support person. The DYCD Appeal Meeting shall be held

1

at DYCD's offices during regular business hours, and the youth and his or her support person will be provided with round-trip Metrocard(s).

In involuntary discharge situations where the youth will participate in a Program Appeal Meeting or a DYCD Appeal Meeting, the youth will be allowed to remain in their current Crisis Services or TIL program pending the determination of the Meeting(s), unless the circumstances of the infraction giving rise to the decision to involuntarily discharge demand that the youth be immediately discharged (such as where the youth poses a serious and evident risk to himself/herself or others or substantially interferes with the health, safety, welfare or care of other residents). Any youth who is involuntarily discharged will be given an appropriate referral with priority given to other local residential programs for young people.

The following provisions must be included in the Procedures all providers must develop:

- Each Procedure must outline its categories for graduated discipline, and the potential consequences of such infractions, including those that could result in involuntary discharge.
- Each Procedure must require that a staff member review the policy with each youth receiving services from the RHY provider. Each provider must utilize an acknowledgment form wherein staff will document that they have reviewed the policy with each such youth. The youth should also sign the acknowledgment form, indicating that they have reviewed the policy with staff. A copy of the acknowledgment form should be kept in the youth's case file, and be available for review by DYCD. If any amendments to the Procedure are made while the youth is receiving services from the provider, the youth should sign an acknowledgment form indicating that the amendments were received and discussed.
- Each Procedure must include provisions for youth to appeal an involuntary discharge decision. Youth must be given an involuntary discharge notice at least 48 hours prior to the proposed discharge, unless the circumstances of the infraction giving rise to the decision to involuntarily discharge demand that the youth be immediately discharged (such as where the youth poses a serious and evident risk to himself/herself or others or substantially interferes with the health, safety, welfare or care of other residents). If the youth disagrees with the decision to discharge, he or she will be afforded the opportunity to have a Program Appeal Meeting before a neutral program supervisor. The youth must request the meeting prior to the proposed discharge, and the meeting must take place no less than 24 hours before the proposed discharge.
- Each Procedure must explain who is authorized to act as a neutral supervisor. At a minimum, to be "neutral" a supervisor will not have been involved in the incident or incidents that precipitated the proposed involuntary discharge.
- Each Procedure must require that the youth be notified of the neutral supervisor's determination in writing (see Attachment D).

- o In the event that the neutral supervisor agrees with the proposed involuntary discharge, the provider must advise the youth of his or her right to request a DYCD Appeal Meeting.
  - o Youth will be provided with a form to use to request a DYCD Appeal Meeting (Attachment E).  If the youth is unable to email the form to DYCD and receive a date for the meeting by email, program staff will submit the form to DYCD and will inform the youth of the meeting date.
  - o If the neutral supervisor disagrees with the plan to involuntarily discharge the youth, the youth will remain a participant in the Crisis Services or TIL program (possibly with reasonable conditions).
- Each Procedure must make clear that the youth will be allowed to remain a participant in the Crisis Services or TIL program (possibly with reasonable conditions) pending the results of the Program Appeal Meeting and, if requested, the DYCD Appeal Meeting unless the circumstances or severity of the alleged infraction giving rise to the potential disciplinary action necessitates immediate discharge.
- Each Procedure must include provisions for the youth to seek services elsewhere after discharge from a Crisis Services or TIL program. Discharged youth will be provided with an appropriate discharge plan including an appropriate referral with priority given to other local residential programs for young people, and a Metrocard.
- If, after all appeal procedures have been exhausted, the involuntary discharge is upheld, the youth will be required to leave the Crisis Services or TIL program. The provider should assist the youth with storing their belongings, or agree to store the youth's belongings for up to seven (7) calendar days, if requested by the youth.

Required Forms

Attachment A: Suggested Categories for Graduated Discipline in RHY Programs

Attachment B: Runaway and Homeless Youth Services Disciplinary Notice

Attachment C: Runaway and Homeless Youth Services Involuntary Discharge Form

Attachment D:  Runaway and Homeless Youth Services Program Appeal Meeting Determination Form

Attachment E: Runaway and Homeless Youth Services Involuntary Discharge DYCD Appeal Meeting Request Form

Attachment F: Runaway and Homeless Youth Services DYCD Appeal Meeting Determination Form

**ATTACHMENT A**

**Suggested Categories for Graduated Discipline in RHY Programs**



**Category 1:** Action that does not cause harm to self, another individual, and or program.

**Consequence**: Noted in case file, case conference with youth regarding incident. *Repeated (two or more) commission of Category 1 infractions will be elevated to Category 2.*

**Category 2:** More serious action than Category 1, or repeated violations of program rules and regulations.

**Consequence**: Written warning with action plan, including potential loss of privileges.  *Repeated commission of Category 2 infractions will be elevated to Category 3 and may lead to involuntary discharge.*

**Category 3:** Action that causes or poses a serious threat of physical and/or emotional harm to another individual, or repeated Category 2 infractions.

**Consequence**: *May lead to involuntary discharge or immediate involuntary discharge.*

| Category 1 EXAMPLES | Category 2 EXAMPLES | Category 3 EXAMPLES |
|---|---|---|
| <ul><li>Disrespecting youth or staff</li><li>Violations of house rules</li><li>Verbal disputes (arguments)</li><li>Curfew violation – 1st offense</li><li>Not performing responsibilities of the household</li><li>Stealing (under $10)</li><li>Destruction of property (under $10)</li></ul> | <ul><li>Direct or implied threats of violence towards staff, residents</li><li>Drinking or possession of alcohol on premises</li><li>Using or possession of illegal drugs on premises</li><li>Sexual Misconduct/Harassment</li><li>Verbal abuse of staff/residents</li><li>Possession of a weapon (ex. pepper spray)</li><li>Unauthorized guests</li><li>Stealing (over $10)</li><li>Destruction of property (over $10)</li><li>Repeated Category 1 infractions</li></ul> | <ul><li>Physical Fighting</li><li>Selling drugs, alcohol or other contraband</li><li>Sexual Assault</li><li>Bullying - online, group, texting</li><li>Possession of a weapon (ex. gun/knife)</li><li>Victimizing staff/residents</li><li>Repeated Category 2 infractions</li></ul> |

**ATTACHMENT B**

**Runaway and Homeless Youth Services**

**DISCIPLINARY NOTICE**

RHY Provider _____

Contract No. _____

Site Address _____

Youth's Name _____    Date of Birth _____

Intake Date _____

Date of warning/discipline _____

Name/title of staff issuing notice _____

Incident(s) requiring warning and reprimand

_____

Discipline imposed

_____
_____
_____

<u>Acknowledgment</u>

A.       I, _____, have received this Disciplinary Notice and I understand the reasons for it.  I understand that if the program decides that I am responsible for further incidents, I may be asked to leave the residence.


B.       Youth declined to sign _____.
                                                        Witness/Date

_____                    _____
Youth signature                               Program Director

_____                    _____
Date                                                 Date


Please provide a copy of this form to the youth.

Youth with questions about this form may call the Legal Aid Society Homeless Rights Hotline at 1-800-649-9125.

**ATTACHMENT C**

**Runaway and Homeless Youth Services**
**INVOLUNTARY DISCHARGE FORM**

**An Involuntary Discharge is initiated by the program, and where the youth may not be in agreement with the discharge, or may believe they are being discharged from the program unfairly.**

RHY Provider _____

Contract No. _____

Site Address _____

Youth's Name _____      Date of Birth _____

Intake Date _____

Initial Discharge meeting date & time_____   Proposed Discharge Date _____

Name/title of person conducting initial discharge meeting _____

Reason for Involuntary Discharge (Attach additional pages and relevant documents and incident reports)
_____
_____
_____
_____

Discharge Plan (Attach additional pages, if necessary)
_____

<u>Acknowledgment</u>

<u>If youth agrees with discharge, complete the following and sign at the bottom:</u>

A.    I, _____, understand the reasons I am being discharged and I agree to the discharge.
        I, _____ (initial) have been provided with a discharge plan.
        I, _____ (initial) have been provided with a referral to _____.
        I, _____ (initial) have been provided with transportation and/or Metrocard(s) for transportation to the referral location.

<u>If youth does not agree with discharge, complete the following and sign at the bottom:</u>

B.    I, _____, do not agree to the discharge and would like to appeal the decision to discharge to a neutral Program Supervisor (attach written determination of meeting).

C.     Youth declined to sign _____.

Witness/Date

_____                    _____
Youth signature                                      Program Director


_____                    _____
Date                                                       Date

Please provide a copy of this form to the youth, and send a copy to your Contract Manager and the RHY Director, with a copy to RHYAppeals@dycd.nyc.gov.

Youth with questions about this form, or the discharge process, may call the Legal Aid Society Homeless Rights Hotline at 1-800-649-9125.

**ATTACHMENT D**

**Runaway and Homeless Youth Services**
**PROGRAM APPEAL MEETING DETERMINATION FORM**

**This form will document the outcome of a Program Appeal Meeting where a youth asked for a supervisor review of the staff decision to discharge the youth from the program.**

RHY Provider_____

Contract No. _____

Site Address _____

Youth's Name _____      Date of Birth _____      Youth present? Y / N

Intake Date _____

Initial Discharge Decision Date _____      Proposed Discharge Date _____

Name/title of person who conducted initial discharge meeting _____

Program Appeal Meeting Date _____      Date of Program Appeal Meeting Determination _____

Name/title of supervisor conducting Program Appeal Meeting _____

<u>Appeal Determination</u>

☐      Discharge overturned.  Check here, provide basis for determination, and sign at bottom.

☐      Discharge upheld.  Check here, complete remainder of form, where applicable, and sign at bottom.

Basis of Decision (attach additional pages)

_____

_____

<u>Discharge Plan</u> (Attach additional pages) _____

<u>Acknowledgment</u>

<u>If youth agrees with discharge, complete the following and sign at the bottom:</u>

A.      I, _____, have met with a neutral Program Supervisor to discuss my discharge.  I understand the reasons I am being discharged and I agree to the discharge.
I, _____ (initial) have been provided with a discharge plan.
I, _____ (initial) have been provided with a referral to _____.
I, _____ (initial) have been provided with transportation and/or Metrocard(s) for transportation to the referral location.

<u>If youth does not agree with discharge, complete the following and sign at the bottom:</u>

B.      I, _____, am not satisfied with the outcome of the appeal meeting and choose to further appeal to DYCD.  I have been provided with a form to submit to DYCD to request an appeal meeting.  I will be permitted to have a support person attend the appeal meeting with me and I (and my support person) will be provided with roundtrip Metrocard(s).

C.      Youth declined to sign _____.
                              Witness/Date

_____                    _____
Youth signature                            Program Director


_____                    _____
Date                                       Date

Please provide a copy of this form to the youth, and send a copy to your Contract Manager and the RHY Director, with a copy to RHYAppeals@dycd.nyc.gov.

**ATTACHMENT E**

**Department of Youth & Community Development**
**Runaway and Homeless Youth Services**

**INVOLUNTARY DISCHARGE DYCD APPEAL MEETING REQUEST FORM**

If you disagree with your program's decision to discharge you and would like to appeal to the NYC Department of Youth and Community Development ("DYCD"), please send the following complete information to RHYAppeals@dycd.nyc.gov no later than the date of your proposed discharge.

Appeal meetings will take place at DYCD's office at 2 Lafayette Street, New York, NY 10007. DYCD will email you at the email address you provide on this form with the date, time and exact location for your appeal meeting. You may bring a support person to your appeal meeting (you must identify the support person (friend, social worker, relative, attorney, advocate, or other individual) and arrange for his/her participation; DYCD will not provide you with a support person). The program will provide round trip Metrocard(s) for you and your support person (if you bring one).

If you cannot attend the appeal meeting, you must email RHYAppeals@dycd.nyc.gov before your scheduled appeal meeting. DYCD will allow two (2) reschedule requests.  If you do not attend the meeting without good cause, the program's discharge decision will stand.

After the appeal meeting, DYCD will email you its determination at the email address you have provided on this form. If DYCD finds that the program wrongly discharged you, you may remain in the program. If DYCD finds that the program's decision to discharge you was correct, you must vacate the program.

RHY Program Name_____

Program Address _____

Your Name _____        Your Date of Birth _____

Your email address _____

Your cell phone number _____

Proposed Discharge Date _____

Reason you think you were wrongly discharged

_____
_____
_____
_____
_____
_____

Please send this form to: RHYAppeals@dycd.nyc.gov.

Youth with questions about this form, or the discharge process, may call the Legal Aid Society Homeless Rights Hotline at 1-800-649-9125.

**ATTACHMENT F**

**Runaway and Homeless Youth Services**
**DYCD APPEAL MEETING DETERMINATION FORM**

RHY Provider _____

Contract No. _____

Site Address _____

Date appeal request received by DYCD _____

Youth's Name _____          Date of Birth _____          Youth present? Y / N

Intake Date: _____

Date of Program Appeal Meeting Determination _____          Proposed Discharge Date _____

Name/title of DYCD staff _____

Name/title of RHY Provider representative _____

Name/title of youth advocate _____

<u>DYCD Determination</u>

☐          Discharge overturned; Check here, provide basis for determination, and sign at bottom.

☐          Discharge upheld; Check here, complete remainder of form, where applicable, and sign at bottom.

Basis of Decision (attach additional pages)

_____
_____
_____

<u>Acknowledgment</u>

A.
I, _____, understand the reasons I am being discharged.
I, _____ (initial) have been provided with a discharge plan.
I, _____ (initial) have been provided with a referral to _____.
I, _____ (initial) have been provided with transportation and/or Metrocard(s) for transportation to the referral location.

B.          Youth declined to sign _____.
                                                            Witness/Date

_____                    _____
Youth signature                                         Program Director

_____                    _____
Date                                                            Date

When this form is completed and signed by the youth and/or program, please provide a copy to the youth, and send a copy (and, where the discharge is upheld, a copy of the discharge plan) to: RHYAppeals@dycd.nyc.gov.